# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| B. RILEY FBR, INC. f/k/a B. RILEY & CO., LLC, | Case No. 18-CV-2318 (NEB/BRT) |
| Plaintiff, | ORDER ON MOTION TO DISMISS AMENDED COMPLAINT |
| v. | |
| THOMAS M. CLARKE, | |
| Defendant. | |

This case presents a dispute over a contract between B. Riley, Thomas Clarke, and various entities, where B. Riley agreed to provide financial advisory services, allegedly provided those services, and was never paid. B. Riley has sued the other entities in a separate lawsuit. In this suit, B. Riley alleges that Clarke negotiated on behalf of the entities, fraudulently induced B. Riley into the contract, and knew all along that B. Riley would not be paid. B. Riley has thus brought several fraud claims and a negligent misrepresentation claim against Clarke, and Clarke has moved to dismiss. The Court concludes that B. Riley failed to plead a duty to disclose and thus dismisses the negligent misrepresentation claim. The Court also concludes that B. Riley successfully pleaded fraud with particularity and denies Clarke's motions on the fraud claims.

**BACKGROUND**

The Court accepts the following factual allegations of the Amended Complaint as true, as it must on a motion to dismiss. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820–21 (8th Cir. 2008). The Plaintiff B. Riley provides investment services to its clients. [ECF No. 13 ¶ 3.] In February 2017, B. Riley began negotiations to provide financial advisory services to ERP Iron Ore, LLC ("ERPI"). [ECF No. 60 ("Complaint" or "Am. Compl.") ¶ 9.] These and additional negotiations ultimately led to three contracts (the "Agreements") for B. Riley to provide financial services to ERPI, Chippewa Capital Partners, LLC, and Mesabi Metallics Company, LLC.

The first agreement is the February 2017 Engagement Agreement between B. Riley and ERPI. (Am. Compl. Ex. A.) The Defendant Thomas Clarke was the sole negotiator on behalf of ERPI, and ultimately signed the document as CEO of ERPI. (Am. Comp. ¶¶ 11, 16.) During the negotiations, "Mr. Clarke represented and affirmed to B. Riley that he had authority to act on behalf of [ERPI] when he negotiated the terms of the Engagement Agreement and signed it on behalf of the company." (*Id.* ¶ 17.)

The second agreement, called the First Amendment, came a month later. It called for B. Riley to provide enhanced services and receive additional fees. (*Id.* ¶¶ 20, 22.) The First Amendment was also between B. Riley and ERPI, and again negotiated and signed solely by Clarke for ERPI. (*Id.* ¶¶ 20, 23.) Clarke "represented and affirmed" that he had authority to act on behalf of ERPI in these negotiations too. (*Id.* ¶ 25.)

2

The third agreement, called the Second Amendment, came at the end of 2017. It added Mesabi, a wholly-owned subsidiary of Chippewa. (*Id.* ¶¶ 26–27.) Clarke negotiated and signed the Second Amendment on behalf of ERPI[1] and Chippewa as CEO of both companies. (*Id.* ¶¶ 28–28, 32)[2] Clarke "never made any representation to B. Riley that he was not an authorized signatory on behalf of ERPI and Chippewa." (*Id.* ¶ 32.) And, during those negotiations, Clarke "knowingly and intentionally made material representations that he and Mesabi would honor the Second Amendment and that he and Mesabi intended to compensate B. Riley under the Agreements." (*Id.* ¶ 28.)

Throughout the negotiations, Clarke affirmatively told B. Riley that he had authority to act on behalf of the entities, and that the entities intended to pay B. Riley for services provided under the Agreements. (Am. Compl. ¶¶ 17, 25, 28, 34, 36, 42, 46, 49, 50.) Conversely, the Complaint alleges, Clarke omitted the opposite information: he did not inform B. Riley that he was not an authorized signatory for the entities or that they were unwilling to pay. (*Id.* ¶¶ 32, 34, 35, 43, 47, 48, 49.)

---

[1] ERPI went into involuntary bankruptcy in May 2018. B. Riley did not sue ERPI in this jurisdiction. B. Riley alleges that it plans to initiate an adversary proceeding against ERPI in bankruptcy court. *See B. Riley FBR, Inc. f/k/a B. Riley & Co., LLC v. Chippewa Capital Partners, LLC, and Mesabi Metallics Company, LLC f/k/a Essar Steel Minnesota*, 18-CV-2575 (NEB/BRT) [ECF No. 1 at 3 n.1.]

[2] Mesabi is a project company in Minnesota developing an iron ore pellet production facility. [ECF No. 13 ¶ 10.] Mesabi filed for Chapter 11 bankruptcy in July 2016. (*Id.*) Its plan of reorganization conveyed ownership of Mesabi to Chippewa in December 2017. (*Id.*) Chippewa is a special-purpose entity formed to acquire Mesabi in the bankruptcy proceedings and is the sole owner of Mesabi. (*Id.* ¶¶ 6–7.)

B. Riley held up its end of the bargain, performing financial services under the Agreements through the spring of 2018. Indeed, in June of that year, Mesabi closed on debt and equity funding for $900 million of new capital, including $650 million of debt financing. (Am. Compl. ¶ 47.) B. Riley calculates that for its role in helping to obtain the financing, Mesabi owes it $16,875,000. (*Id.* ¶¶ 57–60.) But when B. Riley requested payment, Mesabi refused, stating that Clarke did not have authority to bind it to the Agreements. (*Id.* ¶ 61.)

B. Riley sued, claiming that Clarke fraudulently induced B. Riley to enter into these three contracts. According to B. Riley, Clarke made two misrepresentations: (1) he misrepresented his authority to act on behalf of the entities and (2) he misrepresented their intention to pay B. Riley for its work.

B. Riley's original claims included fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation. [ECF No. 1.] About a month after filing suit, B. Riley sought a temporary restraining order and preliminary injunction [ECF No. 11.] and this Court denied the motion [ECF No. 46.] B. Riley later amended its complaint to include a claim for fraudulent omission. (Am. Compl. ¶¶ 95–105.) Clarke then moved to dismiss.[3] [ECF No. 63.]

---

[3] B. Riley also sued Chippewa and Mesabi. *See B. Riley, Inc. v. Chippewa Capital Partners, LLC et al.*, No. 18-cv-2575 (NEB/BRT) (D. Minn.). The Court denied a Motion for Temporary Restraining Order and Preliminary Injunction in that case. The Court later granted Chippewa and Mesabi's Motion to Dismiss because the complaint asked only for injunctive relief, and the parties agreed to address the merits of the case in arbitration.

4

## ANALYSIS

**I.     Standard of Review**

Clarke has moved for dismissal under both Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Federal Rule of Civil Procedure 9(b) for failure to plead fraud with particularity. When reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820–21 (8th Cir. 2008). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" and the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). When the complaint alleges fraud, however, "a party must state with particularity the circumstances constituting fraud or mistake" but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

**II.     Fraud Claims**

B. Riley brings claims for fraudulent inducement, fraudulent misrepresentation, and fraudulent omission. To succeed on its fraud claims, B. Riley must prove:

> (1) a false representation by [Clarke] of a past or existing material fact susceptible of knowledge; (2) made with

> knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce [B. Riley] to act in reliance thereon; (4) that the representation caused [B. Riley] to act in reliance thereon; and (5) that [B. Riley] suffered pecuniary damages as a result of the reliance.

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009) (citing *Hoyt Properties, Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007)). "While a party to a transaction generally has no duty to disclose material facts to the other, '[o]ne who speaks must say enough to prevent his words from misleading the other party.'" *Sorchaga v. Ride Auto, LLC*, 893 N.W.2d 360, 369 (Minn. Ct. App. 2017), *review granted in part* (June 20, 2017), *aff'd*, 909 N.W.2d 550 (Minn. 2018), *reh'g denied* (May 3, 2018) (quoting *Klein v. First Edina Nat'l Bank*, 421, 196 N.W.2d 619, 622 (Minn. 1972)).

### A. *Pleading Fraud with Particularity*

Clarke argues that the Complaint fails to plead fraud with particularity under Rule 9(b). To satisfy this rule, "the complaint must 'allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 938, 946 (8th Cir. 2002)). In other words, the complaint must allege the "who, what, when, where, and how" of the alleged fraud. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997). As a result, "conclusory allegations that a defendant's conduct was

fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1993).

B. Riley's Complaint includes the requisite "who, what, when, where, and how" of the alleged fraud. As one example:

> A meeting was held on December 21, 2017, in New York, New York, with Mr. Clarke and Mr. Rosen, as well as members of the board of directors of Mesabi, during which Mr. Clarke knowingly and intentionally made material representations that he and Mesabi would honor the Second Amendment and that he and Mesabi intended to compensate B. Riley under the Agreements.[4]

(Am. Compl. ¶ 28.) And another:

> During negotiations beginning February 2017, through the signing of the Second Amendment on or about December 22, 2017, and thereafter, in person in New York, New York and also by phone, Mr. Clarke knowingly and intentionally made material false representations, as referenced above, that Chippewa and Mesabi intended to pay B. Riley the compensation due under the Agreements.

(*Id.* ¶ 75.) The Complaint also alleges that at several points, including the meeting in New York and on the phone on many occasions, Clarke assured B. Riley that he had authority to execute the Agreements. (Am. Compl. ¶¶ 42, 50, 65.) Finally, the Complaint alleges that "[u]pon information and belief, at the time the Agreements were signed, Chippewa

---

[4] This paragraph does not mention Chippewa, but the Complaint alleges "[a]t the time the Second Amendment was executed by Mr. Clarke and B. Riley, Mesabi was a wholly-owned subsidiary of Chippewa. Upon information and belief, Mesabi is still a wholly-owned subsidiary of Chippewa." (Am. Compl. ¶ 27.)

7

and Mesabi were unwilling to pay B. Riley the fees properly owed under the Agreements and Mr. Clarke was aware of this unwillingness at the time he made the aforementioned representations to B. Riley." (*Id.* ¶ 51.) These statements, among others, articulate the "who, what, when, where, and how" of the alleged fraud. They include who was speaking (Clarke), when and where he made alleged misrepresentations and omissions (New York and on the phone, several times in 2017), as well as the content of the misrepresentation (that Clarke had the authority to bind the companies and that Mesabi and Chippewa would honor the contract when, in fact, Clarke knew they would not do so). The statements are not conclusory; they are specific about both content and timing. They also satisfy the purpose of Rule 9(b)—to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud. *Commercial Prop. Invs.*, 61 F.3d at 645. Thus, the detail in the Complaint satisfies Rule 9(b)'s particularity requirement, and Clarke's motion on this ground is denied.

**B.** *Intent to Defraud*

Clarke also argues that B. Riley's fraud claims fail because Clarke only made representations about future performance, which may not sustain a claim for fraud. To advance this argument, Clarke relies on the "well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place." *Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974). And so, Clarke argues, "all fraud claims predicated on the

8

theory the companies had no intention of paying Riley and that Clarke is liable for representing to the contrary should be dismissed." [ECF No. 64 at 18.] This argument misses the mark, because B. Riley's theory is more nuanced than that. This suit is not the typical "broken promises" claim for fraud based on a defendant's promise and failure to perform. *See, e.g.*, *EAS Grp., Inc. v. FiberPop Sols., Inc.*, No. 14-MC-0020 (PJS/TNL), 2015 WL 3654323, at *4 (D. Minn. June 11, 2015). B. Riley here sues Clarke, not Mesabi or the other entities. And the Complaint alleges misrepresentations made by Clarke, including that he had authority he did not have, and that he knew Mesabi would pay when in fact he had no such knowledge. This case is different from cases requiring "'affirmative evidence' that the promisor had no intention to perform." *Int'l Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1402 (8th Cir. 1993). The difference lies in the actors: the promisor (Clarke) is different from the performer (Mesabi and the other entities). B. Riley has pled affirmative misrepresentations, as well as material omissions, designed to lure B. Riley into signing a contract where it allegedly performed services benefitting Clarke. Clarke's intent, pled generally, meets the standard of Rule 9(b). Fed. R. Civ. P. 9(b).[5]

---

[5] Even if B. Riley was required to meet the standard of "'affirmative evidence' that the promisor had no intention to perform," the Court's decision would be the same. *Int'l Travel Arrangers.*, 991 F.2d at 1402. The Complaint includes facts supporting the inference of a present intent to defraud—namely, Clarke's alleged repeated misrepresentations about his authority and Mesabi's intention to pay. This case does not present a circumstance where a plaintiff pleads fraud only because a defendant failed to perform.

### C. *Reasonable Reliance*

The Complaint must also allege both that B. Riley actually relied on Clarke's fraudulent statements and that its reliance was reasonable. *Hoyt Properties, Inc.*, 736 N.W.2d at 320. "Reliance in fraud cases is generally evaluated in the context of the aggrieved party's intelligence, experience, and opportunity to investigate the facts at issue." *Valspar Refinish, Inc.*, 764 N.W.2d at 369. The Complaint pleads actual reliance. It alleges that "B. Riley performed financial advisory services, including investment banking services, under the Agreements through the spring of 2018, in direct reliance upon the representations of Mr. Clarke . . . ." and that "B. Riley has not been compensated for the financial advisory services that it provided under the Agreements and but for Mr. Clarke's knowing and intentional false representations, it would not have performed such financial advisory services." (Am. Compl. ¶¶ 53, 62.)

The Complaint also pleads that B. Riley's reliance was reasonable. The Supreme Court of Minnesota has held "that a party can reasonably rely on a representation unless the falsity of the representation is known or obvious to the listener." *Hoyt Properties, Inc.*, 736 N.W.2d at 321 (citing *Spiess v. Brandt*, 230 Minn. 246, 253 (Minn. 1950)). "The listener is not under an obligation to conduct an investigation and thus may rely on the representation so long as it is not known by the listener to be false and is not obviously false." *Id.* The Complaint alleges that Clarke told B. Riley's representatives both that he had authority to bind Chippewa and Mesabi and that Chippewa and Mesabi intended to

honor the agreement. (Am. Compl. ¶ 34.) B. Riley does not allege that it knew those facts were false or that it had any reason to believe they would be false. And the Complaint alleges facts supporting the notion that B. Riley's reliance was reasonable, including: (1) that Chippewa's counsel never notified B. Riley that Clarke was not authorized to bind Chippewa or Mesabi (*Id.* ¶ 35); (2) that Mesabi issued a press release identifying Clarke as "Chippewa principal, and Mesabi's new Chief Executive Officer" (*Id.* ¶ 37); and (3) that Clarke continually signed and accepted work on behalf of the companies (*Id.* ¶¶ 40–41). At this stage of the litigation, B. Riley has put forth enough facts that it reasonably relied on Clarke's representations.[6]

**D.** *Damages*

The Complaint must also plead that B. Riley suffered damages as a result of its reasonable reliance. "In Minnesota, damages for misrepresentation are limited to the actual out-of-pocket loss sustained by the plaintiff as a proximate result of the defendant's fraud and the purchaser's reliance thereon." *Strouth v. Wilkison*, 224 N.W.2d 511, 514 (Minn. 1974) (citation omitted). Here, B. Riley clearly states that it provided financial

---

[6] Clarke argues that in the agreements B. Riley "acknowledge[d] that no representations, inducements, or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that this Agreement . . . embodies the entire agreement and understanding between the parties hereto." [ECF No. 1-1 ("Ex. A") at 3.] But B. Riley is not arguing the parties have an understanding outside the four corners of the agreement. It is arguing that Clarke made fundamental misrepresentations that induced B. Riley to execute an agreement that it otherwise would not have signed—an assertion on which this clause of the agreement has no bearing.

11

advisory services. (Am. Compl. ¶ 53.) And it provided those services based on assurances from Clarke that Chippewa and Mesabi would honor the agreement. (*Id.* ¶ 62.) B. Riley alleges it has not been compensated for those services. (*Id.*) The out-of-pocket loss associated with unpaid financial advisory services can be easily quantified. The Court thus concludes that the Complaint adequately pleads B. Riley's damages for its fraud claims. Because each element of a fraud claim is alleged with particularly, Clarke's motion to dismiss with respect to these claims is denied.

III. **Negligent Misrepresentation**

B. Riley also sued Clarke for negligent misrepresentation. "An essential element of negligent misrepresentation is that the alleged misrepresenter owes a duty of care to the person to whom they are providing information*." Smith v. Woodwind Homes, Inc.*, 605 N.W.2d 418, 424 (Minn. Ct. App. 2000) (citation omitted). While a duty of care exists in certain circumstances, such as when there is a special relationship between the parties, *see Williams v. Smith*, 820 N.W.2d 807, 818 (Minn. 2012), "where adversarial parties negotiate at arm's length, there is no duty imposed such that a party could be liable for negligent misrepresentations." *Safeco Ins. Co. of Am. v. Dain Bosworth Inc.*, 531 N.W.2d 867, 871 (Minn. Ct. App. 1995). The Court agrees with Clarke that the Complaint reveals no duty owed to B. Riley. The parties were "sophisticated equals negotiating a business transaction." *La Parilla, Inc. v. Jones Lang LaSalle Americas, Inc.*, 04-CV-4080, 2006 WL 2069207, at *10 (D. Minn. July 16, 2006). There is nothing in the pleadings suggesting

12

Clarke and B. Riley had a special relationship. Indeed, the agreements themselves suggest otherwise, emphasizing each party's independence and sophistication:

> The Company represents that it is a sophisticated business enterprise that has retained B. Riley for the limited purposes set forth in this Agreement, and the parties acknowledge and agree that their respective rights and obligations are contractual in nature. Each party disclaims any intention to impose fiduciary obligations on the other by virtue of the engagement contemplated by this Agreement.

[ECF No. 60–1 ¶ 19.] Without a special relationship and a corresponding duty of care, it is impossible for B. Riley to succeed on its negligent misrepresentation claim.[7] As a result, the Court dismisses this claim with prejudice.

---

[7] B. Riley argues that New York law applies to this claim and different rules surrounding duty and special relationship apply here. "In a diversity case, a federal court applies the choice of law rules of the forum state." *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997). This Court thus applies Minnesota choice-of-law rules here. "The first step in Minnesota is to consider whether a conflict actually exists between the different states . . . ." *Id.* There appears to be no conflict here. *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 779 (S.D.N.Y. 2011) (finding no duty of care or special relationship when the facts reveal "nothing more than an arms length business arrangement between sophisticated and experienced parties" and citing cases). Under the application of either law, there is no duty of care here because the parties remained adversaries in an arm's-length business negotiation and dismissal of the claim is proper.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. B. Riley's Motion to Dismiss [ECF No. 63] is GRANTED IN PART AND DENIED IN PART as discussed herein;

2. B. Riley's claim for negligent misrepresentation is DISMISSED WITH PREJUDICE.

Dated: September 6, 2019     BY THE COURT:

<span></span>     s/Nancy E. Brasel
     Nancy E. Brasel
     United States District Judge